UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | Chapter 13 |
| | ) | |
| Samuel and Denise Mathis, | ) | Case No. 06 B 11395 |
| | ) | |
| Debtors | ) | Honorable Carol A. Doyle |

### MEMORANDUM OPINION

The debtors, Samuel and Denise Mathis, seek confirmation of their chapter 13 plan, which requires plan payments for three years. The chapter 13 trustee, Marilyn O. Marshall ("trustee"), objects to confirmation because the debtors' income is "over-the-median" for their state but their proposed plan will not last for the five-year commitment period that she argues is mandatory under 11 U.S.C. § 1325(b)(1)(B). The debtors contend that they do not need to pay for five years because § 1325(b)(1)(B) only requires them to pay unsecured creditors their projected disposable income to be received in the applicable commitment period. Calculated in accordance with § 1325(b)(3), their projected disposable income is a negative number. Nevertheless, the debtors propose to pay a minimum of 10% of allowed unsecured claims over three years. The debtors therefore argue that their plan more than complies with § 1325(b)(1)(B).

At issue is whether § 1325(b)(1)(B) can be satisfied when unsecured creditors receive more than they are entitled to in a period shorter than the "applicable commitment period." In other words, the court must decide whether the "applicable commitment period" in § 1325(b)(1)(A) effectively operates as a multiplier to determine the minimum amount that must be paid to unsecured creditors, or whether it is a "temporal" requirement under which a case must stay open for the entire "applicable commitment period" even though no payments will be made

to unsecured creditors under the plan. The court concludes that the commitment period is not a temporal requirement but instead functions as a multiplier, simply determining the minimum amount that debtors must pay to unsecured creditors. Because unsecured creditors are entitled to nothing in this case, the debtor's plan complies with this requirement and will be confirmed.

### 1. Background

Section 1325(b)(1)(B) of the Bankruptcy Code governs the amount that Chapter 13 debtors must pay to unsecured creditors when the debtors will not pay 100% of allowed unsecured claims. If the trustee or an unsecured creditor objects, the debtor's plan must provide that all of the debtor's "projected disposable income" to be received in the "applicable commitment period" will be applied to make payments to unsecured creditors. 11 U.S.C. § 1325(b)(1)(B) (2005). Section 1325(b)(2) defines "disposable income" as the debtor's current monthly income (as defined in § 101(10A)) less expenses reasonably necessary for the support of the debtor and his dependents. For debtors whose income is above the median for their state, § 1325(b)(3) requires debtors to apply the means test in § 707(b) to determine the amount of expenses they may deduct from their monthly income to calculate disposable income. Above-median debtors must complete Form 22C (applying the means test deductions) to calculate their monthly disposable income under § 1325(b)(2).

The debtors' income in this case is above the median for Illinois. After calculating current monthly income and deducting the expenses permitted under § 707(b), their Form 22C shows monthly disposable income of -$4.46. Therefore, under §1325(b)(1)(B), the debtors are not required to make any payments to unsecured creditors under their plan. Nevertheless, in

accordance with a long-standing custom in this district of providing at least 10% to unsecured creditors (not a requirement imposed by the court), the debtors proposed a plan that requires at least 36 payments of $750 and will pay unsecured creditors a minimum of 10% of the allowed amount of their claims.

The trustee does not challenge the debtors' calculation of current monthly income or the expenses they deducted in accordance with §707(b)(2) on their Form 22C. She objects only because the plan will not last for the full five-year "applicable commitment period." She argues that the commitment period operates as the time period during which the debtors' plan must remain open before they are entitled to a discharge. The debtors respond that the commitment period in § 1325(b)(1)(B) simply supplies the number of months that must be multiplied by their projected disposable income (here $0) to determine how much they must pay to unsecured creditors. The court agrees with the debtors.

## 2. § 1325(b)(1)(B)

The starting place for any question of statutory construction is the language of the statute. <u>Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.</u>, 447 U.S. 102, 108 (1980). As noted above, § 1325(b)(1)(B) prescribes the amount debtors must pay their unsecured creditors when their plan will not pay 100% of allowed unsecured claims and the trustee or an unsecured creditor objects. Before the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA") took effect, § 1325(b)(1)(B) required that if the trustee or an unsecured creditor objected, the plan could be confirmed only if:

> (B) the plan provides that all of the debtor's projected disposable income to be received in the three year period beginning on the date that the first payment is due under the plan will be applied to make payments under the plan.

11 U.S.C. § 1325(b)(1)(B) (2000). Thus, pre-BAPCPA, a plan could be confirmed only if the debtor proposed to contribute his projected disposable income to be received in three years to make plan payments.

BAPCPA amended this provision. The amendment replaced "three year period" with "applicable commitment period." It now also specifies that the debtor's projected disposable income must be applied to make payments to "unsecured creditors" under the plan. Amended § 1325(b)(1)(B) provides that if a trustee or unsecured creditor objects, a court may not confirm a plan that pays less than 100% to unsecured creditors unless:

> (B) the plan provides that all of the debtor's projected disposable income to be received in the *applicable commitment period* beginning on the date that the first payment is due under the plan will be applied to make payments *to unsecured creditors* under the plan.

11 U.S.C. § 1325(b)(1)(B) (2005) (new language in italics). BAPCPA also added a definition of "applicable commitment period." Section 1325(b)(4) provides that the applicable commitment period shall be three years, except that for above-median debtors it shall be five years.

This court has previously held that the pre-BAPCPA version of § 1325(b)(1)(B) did not require a debtor's case remain open for any particular time frame before he was entitled to a discharge. Instead, the "three year period" in § 1325(b)(1)(B) operated as a multiplier to be used in calculating the minimum amount that unsecured creditors must receive in a case. In re Mangum, 343 B.R. 185, 188 (Bankr. N. D. Ill. 2006), aff'd, No. 06 C 3847, 2007 WL 495300 (N. D. Ill. Feb. 12, 2007). Mangum involved a chapter 13 debtor who sold her home, used the

proceeds to pre-pay all of her plan payments and sought a discharge before the three years originally anticipated for her plan had passed. The trustee objected, arguing that § 1325(b)(1)(B) required that the debtor's case stay open for three years before she could get a discharge. The court concluded that the debtor had complied with § 1325(b)(1)(B) at confirmation because her plan required her to pay her projected disposable income for three years into the plan. The court further held that § 1325(b)(1)(B) did not impose a "temporal" requirement that a debtor's plan remain open for a certain period of time after confirmation. Instead, it simply provided a basis for determining one "floor" or minimum amount that debtors must pay to unsecured creditors.[1]

As the court noted,

> Nothing in § 1325(b)(1)(B) requires a case to stay open after the debtor makes all the payments required by the plan. The three year requirement in § 1325(b)(1)(B) simply provides one test for determining the minimum amount that a debtor must propose to pay to creditors to have her plan confirmed if she does not pay all creditors 100% of their allowed claims. There is no language in the statute authorizing or requiring the Trustee to keep a case "open," in some sort of limbo, despite the fact that all plan payments have been made.

Mangum, 343 B.R. at 188 (citations omitted).

The new language that BAPCPA added to § 1325(b)(1)(B) does not change this analysis. The phrase "applicable commitment period" replaces "three year period." This change simply reflects the new distinction created in § 1325(b)(4) between above- or below-median income debtors. The word "period" appears in both versions and must be construed in the context of the entire provision. When the entire sentence is considered, it is clear that the commitment period provides the number of months to be multiplied by the debtor's projected disposable income to

---

[1] Another "floor" for the amount unsecured creditors must receive in a chapter 13 case is provided by § 1325(a)(4), which requires a debtor to pay unsecured creditors at least as much as they would receive in a chapter 7 case.

determine the minimum amount that must be paid to unsecured creditors over the course of the plan, not a time frame in which the case must remain open.

Section 1325(b)(1)(B) requires a plan to provide that "all of the debtor's projected disposable income that will be received in the applicable commitment period ... will be applied to make payments to unsecured creditors under the plan." The operative phrases are that *disposable income* that *will be received* in the commitment period *will be applied* to make payments *to unsecured creditors*. The phrase "will be applied to make payments to unsecured creditors" makes it clear that the commitment period must used to determine the amount that must ultimately be paid under the plan to unsecured creditors. It does not say that 36 or 60 plan payments must be made, or that the plan must remain open for any particular duration in time. If Congress wanted to require a debtor to make 36 or 60 plan payments over three or full years, it would have said so. Instead of providing a minimum number of years that payments must be made, § 1325(b)(1(B) is phrased in terms of "income" that must be "applied" to pay unsecured creditors. The trustee focuses on the word "period" in "applicable commitment period" in isolation and ignores the remainder of the provision. Applying the applicable commitment period as a multiplier gives full meaning to each word of § 1325(b)(1)(B): the money expected to be received in the commitment period must be paid to the unsecured creditors under the plan.

### 3. Section 1325(b)(4)(B)

The trustee also argues that § 1325(b)(4)(B) requires the debtors to propose a plan that remains open for five years if they will not pay unsecured creditors in full. Section 1325(b)(4)(A) defines "applicable commitment period," distinguishing between three-year and five-year commitment periods. Section 1325(b)(4)(B) provides that the applicable commitment

period may be less than three or five years (whichever applies), "but only if the plan provides for payment in full of all allowed unsecured claims over a shorter period." The trustee argues that this provision requires debtors to pay their unsecured creditors 100% if the plan will not stay open for five years. This argument is unpersuasive.

Section 1325(b)(4)(B) works in tandem with §1325(b)(1)(B). Section 1325(b)(1) is the operative provision that determines the amount owed to unsecured creditors. Section 1325(b)(4)(A) supplies the number of months by which debtors must multiply their disposable income. Section 1325(b)(4)(B) permits debtors to use fewer than the 36 or 60 months otherwise required for that calculation if they will pay unsecured creditors 100% in a shorter time. This interpretation gives meaning to all the words in both provisions and avoids absurd results.

The trustee's interpretation is inconsistent with the language in § 1325(b)(1)(B). Under that provision, debtors are not required to pay unsecured creditors more than the disposable income left each month after subtracting all of the permitted deductions. Section 1325(b)(4) does not alter the formula by which the minimum amount owed to unsecured creditors is calculated. It simply supplies the proper number by which to multiply projected disposable income to determine the amount that debtors must pay unsecured creditors. The trustee's interpretation would allow a mere exception to the general rule regarding the applicable commitment period to control over § 1325(b)(1)(B), the principal provision that determines the amount that debtors must pay unsecured creditors in chapter 13 – providing a classic example of the tail wagging the dog. If Congress had intended such a result, it would have eliminated the language in §1325(b)(1)(B) requiring only that debtors apply their projected disposable to pay unsecured creditors and replaced it with language requiring debtors to stay in bankruptcy for a minimum number of months or years.

The trustee's interpretation of § 1325(b)(4)(B) also creates absurd results. A significant number of above-median debtors are not required to pay anything to unsecured creditors because of the mandatory calculation of income and expenses under §§ 1325(b)(2) and (b)(3). The trustee would require debtors who can pay arrearages on secured debt during the initial months of the plan to keep their cases open for 60 months with plan payments of $0 and a payout to unsecured creditors of $0. Debtors would be kept in a pointless bankruptcy "limbo" in which no payments are owed but no discharge is granted. As the court noted in In re Fuger, 347 B.R. 94, 101 (Bankr. D. Utah 2006), "[I]t makes little sense to hold the debtor hostage for 60 months where the debtor can satisfy the requirements of § 1325(b)(1)(B) in a shorter period."

The only potential justification for such a result is that keeping the case open allows creditors or the trustee to move to modify the plan if the debtor's income increases while the case is pending. As many courts have recognized, however, once all plan payments are made, the plan may not be modified. See In re Slusher, 359 B.R. 290 (Bankr. D. Nev. 2007), available at No. BK-S-06-10435-BAM, 2007 Bankr. LEXIS 127, at *38; Mangum, 2007 WL 495300 at *4. Section 1329(a) permits modification of a plan only "before completion of payments under such plan." 11 U.S.C. § 1329(a). In cases in which debtors are not required to pay anything to unsecured creditors, once the debtors have paid all arrearages to secured creditors, nothing more will be due under the plan no matter how much longer the case is kept open before the debtor gets a discharge. Thus, modification of the plan during the "limbo" period would not be permitted under §1329(a). No other justification has been offered for keeping a case open when no payments are due.

Courts must interpret statutes to give meaning to all of the words used by Congress and avoid absurd results. TRW Inc. V. Andrews, 534 U.S. 19, 31 (2001); U.S. v. Ron Pair

Enterprises, Inc., 489 U.S. 235, 242 (1989); Fuger, 347 B.R. at 96. The only way to interpret §§ 1325(b)(1)(A) and(b)(4)(B) harmoniously and avoid absurd consequences is by viewing the commitment period as a multiplier that determines the amount owed to unsecured creditors under § 1325(b)(1), with § 1325(b)(4) providing the only basis for using a multiplier of fewer than 36 or 60 months.

Three other provisions of chapter 13 support this interpretation. As noted above, § 1329(a) permits modification of a plan only before plan payments are completed. If Congress had meant to require a case to remain open for a specified time rather than until a specified amount of money is paid, it would have permitted plan modification until that specified time had passed. Instead, § 1329(a) cuts off the right to seek modification of a plan when the payments are completed, not after the expiration of the applicable commitment period.

In two other provisions amended by BAPCPA, Congress chose specific language imposing maximum time limits for plans but did not use similar language imposing a minimum time period in §§ 1325(b)(1)(B) or 1325(b)(4)(B). Section 1322(d) provides that a plan "may not provide for payments over a period that is longer than 5 years" (or three years, depending on the circumstances). 11 U.S.C. §§ 1322(d)(1), (2). Similarly, § 1329(c) provides that a modified plan may not provide for payments "over a period that expires after the applicable commitment period" that runs from the date the first payment was due under the original plan. 11 U.S.C. § 1329(c) (2005). It further provides that "the court may not approve a period that expires after five years after such time." Id. In both provisions, Congress expressly imposed maximum time limits using clear language to that effect – "a period that expires after" the applicable commitment period or five years and "a period that is longer than 5 years." Congress did not use similar language to impose a minimum time requirement for confirmation of a plan. Instead,

Congress required only that debtors apply their projected disposable income over the commitment period to pay unsecured creditors under the plan. 11 U.S.C. § 1325(b)(1)(B). Congress' choice of clear language imposing maximum time limits in §§ 1322(d) and 1329(c) supports the court's conclusion that §§ 1325(b)(1)(B) and (b)(4) do not impose minimum time frames but instead prescribe the minimum amount that must be paid to unsecured creditors.

Finally, the court notes that § 1325(b)(4)(B) is self-contradictory under either interpretation of the applicable commitment period. It permits a commitment period of fewer than 36 or 60 months only if debtors pay 100% to unsecured creditors. But if debtors pay 100% to unsecured creditors, then § 1325(b)(1)(B) does not apply at all so there is no need to consider the "applicable commitment period." The court's interpretation attempts to give meaning to this incongruous provision by construing it as an exception to the general rule that a multiplier of 36 or 60 must be applied.

### 4. Conflicting Decisions

Many courts and commentators have addressed the issue of whether § 1325(b) requires cases to stay open for the applicable commitment period. E.g., Fuger, 347 B.R. at 99 (§ 1325(b)(1) focuses on amount paid to unsecured creditors, not length of time of plan); Slusher, 2007 Bankr. LEXIS 127, at *29 (applicable commitment period is length of time during which the debtor has agreed to make payments); In re Girodes, 350 B.R. 31, 35 (Bankr. M.D.N.C. 2006) (debtor must "remain in Chapter 13" for a period of three or five years unless unsecured creditors paid in full); Henry E. Hildebrand, III, Unintended Consequences: BAPCPA and the New Disposable Income Test, 25 Am. Bankr. Inst. J. 14 (2006); Alane A. Becket & Thomas A. Lee, Applicable Commitment Period: Time or Money?, 25 Am. Bankr. Inst. J. 16

(2006).[2] Courts concluding that the applicable commitment period is "temporal" generally have not discussed the full language of § 1325(b)(1)(B), but instead have focused only on the use of the word "period" as connoting a period of time. See, e.g., Slusher, 2007 Bankr. LEXIS 127, at *28-29; Girodes, 350 B.R. at 35. As discussed above, the court does not find this analysis compelling in light of the remaining language of § 1325(b)(1)(B). These courts also do not address the absurdity of requiring cases to stay open when no payments are due for many months.

One court noted that the multiplier interpretation would permit a debtor to make an early lump sum payment and then exit the case before the commitment period passed because § 1329 does not permit modification of a plan after all plan payments are made. Slusher, 2007 Bankr. LEXIS 127, at *38. Although that is true, there is nothing inappropriate or pernicious about such a result. Nothing in the Code limits a debtor's ability to pre-pay plan payments, as they often do when they sell or refinance their home. In re Mangum, 343 B.R. at 189; see also In re Sunhara, 326 B.R. 768, 782 (9th Cir. BAP 2005); In re Forte, 341 B.R. 859 (Bankr. N.D. Ill. 2005); In re Miller, 325 B.R. 539, 542 (Bankr. W.D. Penn. 2005); In re Richardson, 283 B.R. 783, 801-02 (Bankr. D. Kan. 2002). Prepayment allows creditors to be paid sooner rather than later and a debtor's otherwise significant risk of failure in chapter 13 is eliminated. In re Mangum, 2007 WL 495300, *4 (N.D. Ill. Feb. 12, 2007) Thus, the possibility of pre-payment by a debtor provides no justification for interpreting the applicable commitment period as a minimum time frame rather than a multiplier establishing a minimum amount to be paid to unsecured creditors. In fact, interpreting § 1325(B)(1)(b) to require a debtor to remain in bankruptcy when no more

---

[2]One court has concluded that the requirements of § 1325(b)(1)(B) simply do not apply if there is no projected disposable income. In re Alexander, 344 B.R. 742, 751 (Bankr. E.D.N.C. 2006). This is another way of coming to the same sensible conclusion.

money is owed to creditors seems to have no point other than to punish debtors by delaying discharge and the "fresh start" to which they are entitled.

### Conclusion

For the reasons stated above, the debtors' proposed plan satisfies the requirements of § 1325(b)(1) and will be confirmed.

Dated: May 4, 2007                ENTERED:

_____
CAROL A. DOYLE
United States Bankruptcy Judge